UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SHIRLEY Y. BONSI et al., *Plaintiffs*, v. RENA BITTER, Assistant Secretary for Consular Affairs, Department of State, et al., *Defendants*. | Civil Action No. 23-3740 (TJK) |

## MEMORANDUM OPINION

Barbara Bonsi and her two daughters are residents of Ghana who want to join her mother in the United States. Bonsi's visa application has been pending since 2022, and officials at the U.S. Embassy in Accra have yet to schedule her for a consular interview—a necessary step toward receiving a visa. The family sued Defendants, claiming they have unreasonably delayed processing of the application. Defendants move to dismiss. Although the Court sympathizes with Plaintiffs' situation, their complaint does not plausibly allege that the delay is unreasonable. So the Court will grant the motion and dismiss the case.

**I.      Background**

United States citizens wishing to bring their foreign national relatives to the United States must file a Petition for Alien Relative (Form I-130) with the United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). Upon approval of the petition, USCIS sends the application to the State Department's National Visa Center ("NVC") for processing. *See* 8 C.F.R. § 204.2(a)(3)(i). The foreign relative must then submit additional paperwork, including a visa application (Form DS-260), and fees. *See* 22 C.F.R. § 42.63; 9 Foreign Affs. Manual § 504.1-2(b). Once the applicant does so, the NVC designates the case

"documentarily complete" and coordinates with the appropriate consulate or embassy to schedule the applicant for a required consulate interview. *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)-(d). "Appointments are generally scheduled in the chronological order of the documentarily complete applicants." 9 Foreign Affs. Manual § 504.1-2(d)(1). After the interview, the consular officer "must" either "issue the visa" or "refuse" it. 22 C.F.R. § 42.81(a).

Bonsi's mother, a U.S. citizen, filed a I-130 Petition on behalf of her daughter and granddaughter, who currently live in Ghana. ECF No. 1 ("Compl.") ¶¶ 11, 13. USCIS approved the petition in 2014 and forwarded it to the U.S. Embassy in Accra for further processing. *Id.* ¶¶ 11, 18. In 2017, Bonsi received her "NVC welcome letter" instructing her to submit her DS-260 visa application. *Id.* ¶ 19. Plaintiffs do not specify when Bonsi did so. But in February 2022, Plaintiffs were told that the application was "documentarily complete" and "awaiting an interview appointment." *Id.* ¶ 21. Despite their efforts to contact the State Department, the family has received no meaningful updates on the status of their visa application and have yet to be scheduled for an interview. *See id.* ¶¶ 22–23, 25–29.[1]

Tired of waiting, Plaintiffs sued in December 2023, seeking to compel Defendants to schedule an interview and decide the visa application, among other things. *See* Compl. ("Prayer for Relief"). Defendants now move to dismiss for failure to state a claim.[2] *See* ECF No. 10.

---

[1] In October 2022, Barbara Bonsi's second daughter was born. She too "will . . . seek . . . to accompany her mother to the United States." Compl. ¶ 14.

[2] Although Defendants first say they also move to dismiss under Federal Rule of Civil Procedure 12(b)(1), ECF No. 10 at 6, they nowhere challenge the Court's subject-matter jurisdiction. Nor does the Court discern any basis to do so here. To the contrary, courts routinely decide similar cases challenging the State Department's delay in adjudicating visa applications. *See, e.g.*, *Khan v. Bitter*, No. 23-cv-1576 (BAH), 2024 WL 756643 (D.D.C. Feb. 23, 2024).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Though "a court must accept as true all of the allegations contained in a complaint," "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, a claim is "plausible when it contains factual allegations that, if proved, would 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (alteration in original) (quoting *Twombly*, 550 U.S. at 556). And the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. Analysis

Plaintiffs' claims must be dismissed because the delay in adjudicating the visa application is not unreasonable as a matter of law. Plaintiffs bring their unreasonable delay claims under the APA, 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361. The Court applies the same legal standard to both claims, *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017), and must determine "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (citation omitted). To help guide this inquiry, the D.C. Circuit has laid out a six-factor test:

(1) the time agencies take to make decisions governed by a "rule of reason";

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in enabling the statute, that statutory scheme may supply content for this rule of reason;

3

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expedited delay action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*Telecomms. Rsch. and Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (citations and quotation marks omitted); *see also Da Costa v. Immigration Inv'r Program Office*, 80 F.4th 330, 340 (D.C. Cir. 2023) ("[T]o guide our unreasonable-delay analysis, we ordinarily look to six non-exclusive *TRAC* factors."). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). Courts often group these factors under four basic inquiries. *See Da Costa v. Immigration Inv'r Program Office*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023).

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for [an agency]'s delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the [agency] to act (factors three and five)? [Third], how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Id.* (citation omitted). Taken together, the *TRAC* factors weigh in Defendants' favor. Thus, even accepting Plaintiffs' allegations as true, they are insufficient to state a claim for unreasonable delay.

### 1. *TRAC* Factors 1 and 2

The first two *TRAC* factors tip in Defendants' favor. *See In re Core Commc'ns, Inc.*, 531 F.3d at 855. Typically considered together, these factors require the Court to determine "whether

4

the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Interest*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

There is no statutory or regulatory framework within which the State Department must decide visa applications. *See Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 95 (D.D.C). "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing." *Skalka*, 246 F. Supp. 3d at 153–54. So "the Court looks to case law for guidance." *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021). In *Da Costa*, the D.C. Circuit found a four-and-a-half-year delay "undoubtedly maddening" but not unreasonable. 80 F.4th at 342. And district courts, for their part, "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak v. Pompeo*, 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases). Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." *Tekle v. Blinken*, No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) (collecting cases).

Plaintiffs sued in December 2023, about twenty months after Bonsi's visa application was "documentarily complete." Compl. ¶ 21. So, at this point, the application has been mired in administrative proceedings for nearly three years. That is a long time, to be sure, and Defendants give no reason at all—other than vaguely hinting at the COVID-19 pandemic—for the delay in this case. But the delay is still within the two-to-three-year period that courts have consistently held is not unreasonable and shy of the five-to-seven-year waiting time that may require judicial intervention. Indeed, courts have found greater delays insufficient to warrant relief. *See e.g.*, *Isse v. Whitman*, No. 22-cv-3114 (BAH), 2023 WL 4174357, at *6 (D.D.C. June 26, 2023) (forty-

5

month delay not unreasonable); *Zaman v. DHS.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (forty-two-month delay not unreasonable). While this is a close case—particularly given Defendants' failure to point to any specific resource constraints in Ghana or otherwise explain the troubling delay—the Court would be out of step with the weight of these decisions if it drew the line at three years.

Plaintiffs' arguments do not change that conclusion. First, they contend that Defendants cannot rely on "COVID-19 as an excuse for inaction" because U.S. and global agencies declared an end to the public health emergency in May 2023. ECF No. 11 at 10. True, Defendants do lean heavily on caselaw from the height of COVID-19. *See* ECF No. 10 at 10–13. But just because the pandemic is over does not mean the "visa application backlog" stemming from that time is too. *See Hamdan v. Oudkirk*, No. 24-cv-1001 (BAH), 2024 WL 4553983, at *9 (D.D.C. Oct. 23, 2024); ECF No. 13 at 3. Indeed, Plaintiffs recognize that, although the State Department has reduced the "interview scheduling backlog," it remains at "275,500" worldwide. ECF No. 11 at 11 (citing U.S. Dep't of State, *Worldwide Visa Operations: Update* (Jan. 2, 2024), https://perma.cc/XV69-X98S). So "the strain on agency resources following the health crisis" is still "important context." *Saulnier v. Garland*, No. 23-cv-905 (BAH), 2024 WL 3566225, at *8 (D.D.C. July 29, 2024). In any event, a two-to-three year delay in processing a visa application has been considered reasonable before and after the pandemic. *See, e.g.*, *Khan v. Bitter*, 23-cv-1576 (BAH), 2024 WL 756643, at *5 (D.D.C. Feb. 23, 2024) (29-month delay not unreasonable); *Ahmed v. U.S. Dep't of State*, No. 23-cv-2474 (SVK), 2024 WL 315705, at *4 (N.D. Cal. Jan. 26, 2024) (citing cases that hold delays of three, four, and five years are not unreasonable); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) ("[D]elays of four years or less [are] not . . . unreasonable."). Plaintiffs cite no caselaw holding otherwise.

6

Second, Plaintiffs point out that Congress has expressed its "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." ECF No. 11 at 9 (quoting 8 U.S.C. § 1571(b)). But that prefatory language in the statute is non-binding because "a sense of Congress resolution is not law." *Emergency Coal. To Def. Educ. Travel v. Dep't of Treasury*, 545 F.3d 4, 14 n.6 (D.C. Cir. 2008). At most, Congress's "aspirational statement" slightly nudges the second *TRAC* factor in Plaintiffs' favor. *Da Costa*, 80 F.4th at 344. But it does no more because the "delay has not reached the level of disproportionality [courts] have previously held sufficient to grant relief." *Id.* (referencing a nineteen-year delay). So the Court's conclusion that the first and second *TRAC* factors favor Defendants remains unchanged.

    2.    ***TRAC* Factor 4**

The fourth *TRAC* factor, which considers the effect of expedition on an agency's competing priorities, heavily favors Defendants. *TRAC*, 750 F.2d at 80. It often "carries the greatest weight," and this Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319, (D.D.C. 2020) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). That is so because courts "are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee v. Blinken*, No. 23-cv-1783 (DLF), 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, granting expedited agency action is inappropriate when that relief "would necessarily come 'at the expense of other similarly situated applicants'" with "no net gain" in adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016), and *In re Barr Labs., Inc.*, 930 F.2d at 75).

This factor is ultimately fatal to Plaintiffs' unreasonable-delay claim because they ask for just that: to cut to the front of the line. S*ee* Compl. ¶ 1. But consular "processing is presently a zero-sum game." *Shirouyehnezhad v. Blinken*, Civ A. No. 23-2910 (TSC), 2025 WL 82299, at *4 (D.D.C. Jan. 13, 2025) (citation omitted). So Plaintiffs' requested relief would amount to a "disfavor[ed] judicial reordering of immigration priorities" at the agency. *Id.* Ordering Defendants to "immediately" schedule visa interviews for Plaintiffs and adjudicate their application is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (quoting *Skalka*, 246 F. Supp. 3d at 154).

Plaintiffs try to avoid that pitfall by arguing that ordering an expedited interview and adjudication "would not be considered 'line-cutting'" but rather "a corrective action" here. ECF No. 11 at 13–14. Specifically, they contend the State Department's visa bulletin shows that consulates are now adjudicating visa applications with a priority date of February 8, 2015, and Plaintiffs' "priority date is from May 2011—nearly four years earlier." *Id.* at 13. But Plaintiffs "fail to account for other petitioners in precisely the *same* situation who may have filed their petitions earlier," or may have submitted the required paperwork before Plaintiffs did. *Desai v. USCIS*, No. 20-cv-1005 (CKK), 2021 WL 1110737, at *5 (D.D.C. Mar. 22, 2021) (emphasis in original); *see Varghese v. Blinken*, No. 21-CV-2597 (CRC), 2022 WL 3016741, at *6 (D.D.C. July 29, 2022) (citation omitted) (explaining that consulates fill interview appointments "in a first-in, first-out manner" once "an applicant's paperwork is documentarily complete."). To be sure, "the effect" of moving Plaintiffs' application ahead of the line "would be minimal," but "an accumulation of such individual cases being [so] pushed by judicial fiat . . . would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021).

### 3. *TRAC* Factors 3, 5 and 6

Factors three and five, which involve "the interest prejudiced by delay," including possible

8

effects on "human health and welfare," slightly favor Plaintiffs. *TRAC*, 750 F.2d at 80; *see also Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (considering the third and fifth factors together). While the complaint is sparse on relevant details, Bonsi is a single mother with two young children. Compl. ¶¶ 12–14. They "have been anticipating being together" with Bonsi's mother for over a decade, *id.* ¶ 36, and the delay has caused them "distress," *id.* ¶ 26. "[P]rolonged and indefinite separation" of families can indeed place health and welfare at stake, *Bagherian*, 442 F. Supp. 3d at 95, and Plaintiffs' interest in receiving a decision is "undeniably significant," *Didban*, 435 F. Supp. 3d at 177; *see Ghadami v. DHS*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (third and five factors favored plaintiffs, who alleged that the delay "irrevocably harmed" them "by causing a loss of consortium"); *Mokkapati v. Mayorkas*, No. 21-cv-1195 (BAH), 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) (similar).

Still, the Court takes Defendants' point that Plaintiffs' situation is not unique. *See* ECF No. 10 at 16; *see also Palakuru v. Renaud*, 521 F. Supp. 3d 46, 53 (D.D.C. 2021). The third factor indeed "also looks to the impact on others from granting plaintiff's demanded relief." *Sereshti v. Gaudiosi*, No. 24-cv-1288 (BAH), 2024 WL 4625802, at *10 (D.D.C. Oct. 30, 2024). And "there is no reason" to think Plaintiffs' "private interests in 'health and welfare' deserve special treatment relative to other visa applicants' interest in the same." *Noori v. Blinken*, No. 23-cv-1463 (TJK), 2024 WL 939990, at *4 (D.D.C. Mar. 5, 2024). In any event, even if these two factors do weigh in Plaintiffs' favor to some extent, they cannot overcome the preceding factors that weigh in Defendants' favor. *See Dastagir*, 557 F. Supp. 3d at 168.

Finally, the sixth factor is a wash. Plaintiffs do not allege "bad faith or impropriety" on the part of the State Department. *TRAC*, 750 F.2d at 80. But absent "plausible evidence of bad faith"—and there is none here—this factor is neutral. *Sereshti*, 2024 WL 4625802, at *10.

9

\*   \*   \*

The Court is troubled by the time it has taken to process Plaintiffs' visa application and hopes that the State Department can evaluate it expeditiously. But after weighing the *TRAC* factors, the Court finds that Plaintiffs have not stated a claim that the adjudication of their visa application has been unreasonably delayed.[3]

## IV.   Conclusion

For all these reasons, the Court will grant Defendants' motion and dismiss the case. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: January 23, 2025

---

[3] Plaintiffs also ask that the Court compel Defendants to add Bonsi's second daughter "as an accompanying minor and include her in the family's Immigrant Visa appointment." Compl. at p.12. As noted, this child was born after the visa application was documentarily complete, and Plaintiffs allege "[t]here is currently no option to add her to the case via the NVC portal." *Id.* ¶ 14. The Court, however, is unaware of any authority for it to order such relief, and Plaintiffs offer none.